ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL VII**

| | | |
|---|---|---|
| **TAYLIANA PASTRANA RAMOS** <br> PETICIONARIA(S)-RECURRIDA(S) <br><br><br> V. <br><br><br> **JOSÉ RIVERA VERGNE** <br> PETICIONADA(S)-PETICIONARIA(S) | **TA2025CE00357** | **CERTIORARI** <br> procedente del Tribunal de Primera Instancia, Sala Municipal de **SAN JUAN** <br><br> Caso Núm. <br> **SJL284-2025-5525** <br><br> Sobre: <br> Orden de Protección <br> Ley 284 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 13 de noviembre de 2025.

Comparece ante este Tribunal de Apelaciones, el señor **JOSÉ RIVERA VERGNE** (señor **RIVERA VERGNE**) mediante *Certiorari* instado el 27 de agosto de 2025. En su recurso, nos solicita que revisemos la *Orden de Protección al Amparo de la Ley Contra el Acecho en Puerto Rico Enmendada* decretada el 28 de julio de 2025 por el Tribunal de Primera Instancia (TPI), Sala Municipal de San Juan.[1] Mediante la susodicha decisión, el foro de instancia concedió la *Orden de Protección al Amparo de la Ley Contra el Acecho en Puerto Rico Enmendada* desde el 9 de julio de 2025 hasta el 9 de julio de 2026; y requiriéndole al señor **RIVERA VERGNE** abstenerse de acosar, perseguir, intimidar, amenazar o de cualquier otra forma interferir con la señora **TAYLIANA PASTRANA RAMOS** (señora **PASTRANA RAMOS**).

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 28 de julio de 2025. Apéndice del *Certiorari*, entrada núm. 2 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TA), págs. 9- 14.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 14 de abril de 2025, la señora PASTRANA RAMOS entabló una *Petición de Orden de Protección al Amparo de la Ley Contra el Acecho en Puerto Rico*.[2] La señora PASTRANA RAMOS expuso que es residente en el Condominio Pórticos de Cupey (Condominio) y desde que se mudó a ese lugar el señor RIVERA VERGNE la acecha.[3] Especificó que, desde el 6 de septiembre de 2022, el señor RIVERA VERGNE le ha vandalizado su vehículo de motor. Más tarde, el 22 de noviembre de 2023, el señor RIVERA VERGNE vandalizó nuevamente su automóvil. La señora PASTRANA RAMOS elucidó que el 22 de abril de 2024 el señor RIVERA VERGNE apuñaló la puerta de su apartamento y, acto seguido, le realizó cinco (5) punzadas a una de las llantas traseras de su auto.

Exteriorizó que el 11 de julio de 2024, el señor RIVERA VERGNE la acosó al proferirle palabras "fuera de lugar" cuando esta se disponía a subir a su vivienda. En otra ocasión, el 17 octubre de 2024, aludió que el señor RIVERA VERGNE vandalizó nuevamente su auto. La señora PASTRANA RAMOS enunció que el señor RIVERA VERGNE le cierra la llave de paso del agua constantemente. Finalmente, el 14 de abril de 2025, la cámara de seguridad de la señora PASTRANA RAMOS captó al señor RIVERA VERGNE escupiendo la puerta de su residencia. Por todos esos hechos, la señora PASTRANA RAMOS suplicó la *Orden de Protección*. Ese mismo día, se expidió una *Orden de Protección Ex Parte al Amparo de la Ley Contra el Acecho en Puerto Rico* (*Orden de Protección Ex Parte*) vigente desde el 14 de abril de 2025 hasta el 9 de julio de 2025.

El 9 de julio de 2025, se celebró la audiencia final.[4] La señora PASTRANA RAMOS declaró que desde que reside en el Condominio, el señor RIVERA

---

[2] Apéndice del *Certiorari*, entrada núm. 1 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TA), págs. 1- 4.

[3] El señor RIVERA VERGNE reside en el Apartamento N-101 y la señora PASTRANA RAMOS reside en el Apartamento N-201.

[4] Transcurrieron unos ochenta y seis (86) días desde que se otorgara la *Orden de Protección Ex Parte*.

VERGNE ha tenido encontronazos con ella. Aseveró que le dice lo que tiene que hacer; la acecha; la vigila por la ventana; abre la puerta de su apartamento sin camisa y la mira de forma agresiva. Atestó que el señor RIVERA VERGNE le cuestiona por qué sube las escaleras y por qué mira hacia su vivienda. Además, manifestó que el señor RIVERA VERGNE le cierra la llave de paso del agua y, en cinco (5) ocasiones, el señor RIVERA VERGNE le ralló su carro de lado a lado. Sobre el incidente con la llanta, articuló que llamó a un gruero para movilizar su vehículo y este le informó que el neumático no fue un accidente en la carretera, sino un apuñalamiento. Afirmó que estos acontecimientos han provocado que se ausente de su trabajo y ha incurrido en gastos por las restauraciones. La señora PASTRANA RAMOS testificó que el señor RIVERA VERGNE la mira "como si tuviese el diablo por dentro" y ello le asusta mucho. Indicó que se comunicó con los guardias de seguridad del Condominio y estos redactaron un informe sobre los incidentes. Desde el 14 de abril de 2025, se estaciona al lado de la caseta del guardia y estos la acompañan desde el auto hasta su apartamento y viceversa.

Por otro lado, el señor RIVERA VERGNE compareció por derecho propio a la audiencia. Negó las alegaciones en su contra. Reconoció que realizó el "gesto" de escupir la puerta de la señora PASTRANA RAMOS. Explicó que, en el pasado, la señora PASTRANA RAMOS realizó comentarios que el cataloga como impropios sobre lo que él hacía en su baño. El señor RIVERA VERGNE admitió que le ha comentado a la señora PASTRANA RAMOS que no mire a la sala de su apartamento con "cara y con actitud". Además, aseguró que la señora PASTRANA RAMOS se comportó de manera dañina con su señora madre, quien residió en el Apartamento N-101.

Luego de escuchadas las partes y de examinar la prueba documental, el foro de instancia dispuso la referida *Orden de Protección al Amparo de la Ley Contra el Acecho en Puerto Rico.*

Inconforme, el 24 de julio de 2025, el señor **RIVERA VERGNE** presentó *Moción de Reconsideración.*[5] A los pocos días, el 29 de julio de 2025, la señora **PASTRANA RAMOS** presentó *Oposición a Moción de Reconsideración.*[6] En consecuencia, el 28 de julio de 2025, se intimó la *Orden* declarando no ha lugar a la petición de reconsideración y la *Orden de Protección al Amparo de la Ley Contra el Acecho en Puerto Rico Enmendada* impugnada.[7]

Aun en desacuerdo, el 27 de agosto de 2025, el señor **RIVERA VERGNE** recurrió ante este foro revisor señalando el(los) siguiente(s) error(es):

> ¿Si el Tribunal Municipal de San Juan erró o no al emitir una Orden de Protección Ex Parte por un periodo que se extiende a ochenta y seis (86) días?

> ¿Si existían o no los elementos para otorgar una Orden de Protección de un año y si ese era el remedio de ley apropiado?

El 4 de septiembre de 2025, pronunciamos *Resolución* concediendo, entre otras cosas, un término perentorio de diez (10) días para mostrar causa por la cual no debíamos expedir el auto de *Certiorari* a la señora **PASTRANA RAMOS**. El 15 de septiembre de 2025, la señora **PASTRANA RAMOS** presentó su *Oposición a Petición de Certiorari*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *CERTIORARI*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior

---

[5] Apéndice del *Certiorari*, entrada núm. 2 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TA), págs. 3- 8.

[6] Apéndice del *Certiorari*, entrada núm. 3 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TA), págs. 1- 4.

[7] Apéndice del *Certiorari*, entrada núm. 2 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TA), págs. 1- 2.

instancia judicial.[8] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[9]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[10] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[11]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[12] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[13] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[14]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos

---

[8] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[9] *Íd.*
[10] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[11] *Íd.*
[12] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[13] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[14] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59- 60, 215 DPR __ (2025); *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[15]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[16] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[17]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[18] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[19] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[20] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[21]

---

[15] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.
[16] *Íd.*
[17] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[18] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[19] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[20] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[21] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[22] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[23]

### - B - *Ley Contra el Acecho en Puerto Rico*

El 21 de agosto de 1999, nuestra Asamblea Legislativa aprobó la Ley Núm. 284-1999, mejor conocida como la *Ley Contra el Acecho en Puerto Rico*, según enmendada, que provee mecanismos para proteger debidamente a las personas que son víctimas de acecho.[24] Su objetivo es "tipificar como delito y penalizar todo patrón de conducta de acecho, que induzca temor en el ánimo de una persona razonable y prudente de sufrir algún daño físico en su persona, sus bienes y/o en la persona de un miembro de su familia".[25] En particular, se "reafirma la política pública del Gobierno de Puerto Rico de luchar contra cualquier tipo de manifestación de violencia que atente contra los valores de paz, seguridad, dignidad y respeto que se quieren mantener para nuestra sociedad".[26]

Cónsono con lo anterior, el Artículo 3(a) de la Ley Núm. 284-1999, define *acecho* en los siguientes términos:

> **(a)** "**Acecho**" — Significa una conducta mediante la cual se ejerce una vigilancia sobre determinada persona; se envían comunicaciones verbales o escritas no deseadas a una determinada persona, se realizan amenazas escritas, verbales o implícitas a determinada persona, se efectúan actos de vandalismo dirigidos a determinada persona, **se hostiga repetidamente mediante palabras, gestos o acciones dirigidas a intimidar, amenazar o perseguir a la víctima o a miembros de su familia**.[27] (Énfasis nuestro).

---

[22] *García v. Asociación*, 165 DPR 311, 322 (2005).
[23] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[24] Conocida como la Ley Núm. 284 de 21 de agosto de 1999, 33 LRPA § 4013, *et seq.*.
[25] *Exposición de Motivos* de la Ley Núm. 284-1999, *supra*.
[26] *Id*.
[27] 33 LPRA § 4013.

Por otro lado, el Artículo 3 (b) del estatuto preceptúa el patrón de conducta persistente:

> Significa realizar en dos (2) o más ocasiones actos que evidencian el **propósito intencional de intimidar a determinada persona o a miembros de su familia**. (Énfasis nuestro).

A su vez, el Artículo 4 de la precitada Ley Núm. 284-1999 tipifica el delito de acecho:

> Toda persona que **intencionalmente manifieste un patrón constante o repetitivo de conducta de acecho dirigido a intimidar a una determinada persona a los efectos de que ella, o cualquier miembro de su familia podría sufrir daños, en su persona o en sus bienes**; o que mantenga dicho patrón de conducta a sabiendas de que determinada persona razonablemente podría sentirse intimidada incurrirá en delito menos grave.[28] (Énfasis nuestro).

Asimismo, define *intimidar* en el Artículo 3(f) como:

> **[T]oda acción o palabra que manifestada repetidamente infunda temor en el ánimo de una persona prudente y razonable** a los efectos de que ella, o cualquier miembro de su familia pueda sufrir daños, en su persona o en sus bienes, y/o ejercer presión moral sobre el ánimo de ésta para llevar a cabo un acto contrario a su voluntad.[29] (Énfasis nuestro).

En su *Exposición de Motivos,* la Ley Núm. 284-1999 instaura que el *acecho* constituye una actividad criminal compuesta de una serie de actos que al examinarse pueden parecer un comportamiento legal tal como enviar flores, escribir cartas de amor o esperar por una persona fuera de su lugar de trabajo o de su casa. Empero, estos actos por sí solo no constituyen *acecho*. Aún así, tales "actos unidos a intentos de atemorizar, intimidar o hacer daño a una persona, o a miembros de su familia o a su propiedad, pueden constituir un patrón de conducta ilegal".[30]

Como consecuencia, toda orden de protección al amparo de esta disposición legal es un mecanismo rápido y ágil que ampara a las personas que son víctimas de *acecho*. A esos fines, el Artículo 5 (a) de la Ley Núm. 284-1999 faculta a cualquier persona que haya sido víctima de *acecho* o de conducta constitutiva del delito según tipificado, a presentar una petición de

---

[28] 33 LPRA § 4104.
[29] 33 LPRA § 4013.
[30] *Exposición de Motivos* de la Ley Núm. 284-1999, *supra*.

orden de protección sin que sea necesario la presentación de una denuncia o acusación.

A esos efectos, se reconoce la facultad del Tribunal para emitir *Órdenes de Protección*. Sobre este particular, el Artículo 5 de la Ley Núm. 284-1999, provee que:

> *(a) Cualquier persona que haya sido víctima de acecho, o conducta constitutiva del delito según tipificado en esta Ley, en el Código Penal del Estado Libre Asociado de Puerto Rico, o en cualquier otra ley especial, podrá presentar por sí, por conducto de su representante legal o por un agente del orden público, una petición en el tribunal solicitando una orden de protección, sin que sea necesario la prestación previa de una denuncia o acusación.*[31]

Una vez presentada la petición, el tribunal, sin escuchar prueba, citará a una vista con el fin de escuchar a las partes, y determinar si expide o no la *Orden*. Asimismo, el Artículo 6 de la Ley Núm. 284-1999, enuncia:

> *(c) Una vez presentada una petición de orden de protección, de acuerdo a lo dispuesto en esta Ley, el tribunal expedirá una citación a las partes bajo apercibimiento de desacato, para una comparecencia dentro de un término que no excederá de cinco (5) días. La notificación de las citaciones y copia de la petición se hará conforme a las Reglas de Procedimiento Civil de Puerto Rico de 2009, según enmendadas, y será diligenciada por un alguacil del tribunal o por cualquier otro oficial del orden público, a la brevedad posible, y tomará preferencia sobre otro tipo de citación, excepto aquellas de similar naturaleza. El tribunal mantendrá un expediente para cada caso en el cual se anotará toda la citación emitida al amparo de esta Ley.*
>
> [...]
>
> *(e) Cuando la petición sea presentada, la notificación de la misma se efectuará conforme a lo establecido en las Reglas de Procedimiento Civil de Puerto Rico de 2009, según enmendadas. A solicitud de la parte peticionaria, el tribunal podrá ordenar que la entrega de la citación se efectúe por cualquier persona mayor de dieciocho (18) años de edad que no sea parte ni tenga interés en el caso.*[32]

Si el tribunal determina que existen motivos suficientes para creer que la parte peticionaria ha sido víctima de *acecho*, emitirá la *orden de protección*.[33] A su vez, podrá incluir en dicha *Orden* las siguientes limitaciones:

> *(1) Ordenar a la parte peticionada abstenerse de molestar, hostigar, perseguir, intimidar, amenazar, o de cualesquiera otras formas*

---

[31] 33 LPRA § 4015.
[32] 33 LPRA § 4016.
[33] Art. 5 de la Ley Núm. 284-1999, *supra*.

*constitutivas bajo esta Ley de acecho, dirigidas a la parte peticionada.*

*(2) Ordenar a la parte peticionada abstenerse de penetrar en cualquier lugar donde se encuentre la parte peticionaria, cuando a discreción del tribunal dicha limitación resulte necesaria para prevenir que la parte peticionada moleste, intimide, amenace o de cualquier otra forma aceche y/o interfiera con la parte peticionaria y/o un miembro de su familia.*

*(3) Ordenar a la parte peticionada pagar una indemnización económica por los daños que fueren causados por la conducta constitutiva de acecho. Dicha indemnización podrá incluir, pero no estará limitada a, compensación por gastos de mudanza, gastos por reparaciones a la propiedad, gastos legales, gastos médicos y psiquiátricos, gastos de psicólogos y de consejería, orientación, alojamiento, y otros similares, sin perjuicio de otras acciones civiles a las que tenga derecho la parte peticionaria.*

*(4) Emitir cualquier orden necesaria para dar cumplimiento a los propósitos y a la política pública de esta Ley.*

*(5) Ordenar a la parte peticionada a desalojar la residencia que comparte con la parte peticionaria, independientemente del derecho que reclame sobre la misma; disponer sobre cualquier medida provisional respecto a la posesión y uso de la residencia de la que se haya ordenado el desalojo y los bienes muebles que se encuentren en esta; ordenar al dueño o encargado de un establecimiento residencial del que se haya ordenado el desalojo a tomar las medidas necesarias para que no se viole la orden emitida por el tribunal; y, emitir cualquier orden necesaria para dar cumplimiento a los propósitos y política pública de esta Ley.*[34]

En definitiva, la *orden de protección* es un remedio civil que puede solicitar cualquier persona que haya sido víctima de **acecho**, o **de conducta constitutiva del delito de acecho**, sin que sea necesario la presentación previa de una denuncia o acusación. El tribunal podrá emitir una *orden de protección* cuando determine que existen motivos suficientes para creer que la parte peticionaria ha sido víctima de *acecho*. Conviene subrayar que, el Tribunal de Apelaciones podrá revisar las *órdenes de protección* de conformidad a los criterios establecidos en ley.

### - C – *APRECIACIÓN DE LA PRUEBA*

Cuando se evalúa la *apreciación de la prueba* desfilada ante el Tribunal de Primera Instancia, como regla general, se le reconoce amplia deferencia a las determinaciones de hechos que formula el honorable Juez de instancia.[35] En esa misma dirección, es menester fundamentar que la Regla 42.2 de las de Procedimiento Civil de 2009 implanta que las determinaciones de hechos que

---

[34] *Id.*

[35] Rivera Román, Luis, *La Apreciación de Prueba en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones, Perspectivas en la Práctica Apelativa*, Ediciones Situm 2018, pág. 91.

contempla el foro de instancia a base de testimonios orales "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos".[36]

Igualmente, la Regla 110 de Evidencia sostiene que "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar cuáles hechos fueron establecidos o demostrados".[37] Así pues, es norma reiterada que cuando se le ruega a un foro apelativo que revise [determinaciones] de hechos, la *apreciación de la prueba*, en primer lugar, le corresponde al tribunal sentenciador debido a que estos tienen la oportunidad de observar y oír a los testigos, y por ello, están en mejor posición de evaluarla.[38] En ese sentido, la evaluación del foro sentenciador merece respeto y deferencia.[39]

Afín con ello, "los tribunales apelativos no intervenimos ni alteramos innecesariamente las determinaciones de hechos que hayan formulado los tribunales de primera instancia luego de admitir y aquilatar la prueba presentada durante el juicio".[40] En otras palabras, no debemos descartar las determinaciones "tajantes y ponderadas del foro de instancia" y sustituirlas por nuestra propia apreciación, a base de un examen del expediente del caso.[41]

Dicho esto, la deferencia al juicio del juzgador de hechos "no es absoluta" pues "[u]na apreciación errónea de la prueba no tiene credenciales de inmunidad" frente a nuestra facultad revisora.[42] Los foros apelativos podremos intervenir con la *apreciación de la prueba* cuando exista error manifiesto, pasión, prejuicio, parcialidad o cuando un análisis integral,

---

[36] 32 LPRA Ap. V, R. 42.2.
[37] 32 LPRA Ap. VI, R. 110.
[38] Rivera Román, Luis, *op. cit.*, págs. 92– 93. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 98-99 (2000); *López Vicil v. ITT Intermedia, Inc.*, 142 DPR 857, 865 (1997).
[39] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).
[40] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 65 (2009).
[41] *Íd.*, págs. 65- 66.
[42] *Ramos Acosta v. Caparra Dairy, Inc.*, 113 DPR 357, 365 (1982); *Vda. de Morales v. De Jesús Toro*, 107 DPR 826, 829 (1978).

detallado y minucioso de la prueba así lo justifique.[43] Ello sin olvidar que "la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia significaría el caos y la destrucción del sistema judicial existente en nuestra jurisdicción".[44]

Respecto al prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna".[45] Consecuentemente, se consideran erróneas las conclusiones del [tribunal] apelado, si de un análisis de la totalidad de la prueba, el foro apelativo entiende que esta se distancia de la realidad fáctica o es inherentemente imposible o increíble.[46] Como resultado, el juez debe evitar cualquier distracción de alcanzar conclusiones tempranas durante la presentación de la prueba y debe aguardar con paciencia hasta escuchar la prueba de la parte adversa, para luego determinar los hechos esenciales del caso.[47]

Con ese propósito, la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba desfilada, lo cual incluye, entre otros factores, observar el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz.[48] En consonancia, los tribunales apelativos no intervendremos con la *apreciación de la prueba*, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto.[49] Cuando la alegación es de pasión, prejuicio o parcialidad, los foros apelativos debemos verificar

---

[43] *Pueblo v. García Colón I*, 182 DPR 129 (2011); *González Hernández v. González Hernández, supra*, pág. 777.
[44] *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018).
[45] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).
[46] *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002).
[47] Rivera Román, Luis, *op. cit.*, pág. 94.
[48] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783 (2020).
[49] *Íd.*

primordialmente si el juez de primera instancia cumplió su función de adjudicar de manera imparcial, pues solo así podremos descansar en sus determinaciones de hechos.[50]

### - III -

En su recurso, el señor **RIVERA VERGNE** sustenta que el foro primario erró: (i) al expedir una *orden de protección ex parte* por un plazo que extiende ochenta y seis (86) días siguientes a su expedición; y (ii) si existían los elementos para otorgar una *orden de protección* por un (1) año y si ese era el remedio en ley apropiado.

La señora **PASTRANA RAMOS** aduce que el señor **RIVERA VERGNE** ha incurrido en conducta constitutiva de *acecho* (vandalismo, palabras, gestos y acciones) por varios años y ello le ha causado temor e inseguridad.

El 14 de abril de 2025, la señora **PASTRANA RAMOS** incoó una *Petición de Orden de Protección al Amparo de la Ley Contra el Acecho en Puerto Rico* (*Orden de Protección*). Así, se otorgó una *Orden de Protección Ex Parte* y se pautó audiencia.

Ciertamente, la Ley Núm. 284-1999 apresta que la audiencia se celebre dentro de los próximos cinco (5) días de haberse expedida la *orden de protección ex parte* (*provisional*), salvo que la parte peticionaria solicite prórroga a tal efecto. En el caso ante nos, por razones desconocidas, se pautó audiencia en una fecha posterior a los cinco (5) días después de la expedición de la *orden de protección ex parte*. La señora **PASTRANA RAMOS** nos invita a tomar en consideración la disponibilidad de los calendarios judiciales. En efecto, las salas municipales atienden un sinnúmero de casos. No vemos como este proceder haya afectado los derechos del señor **RIVERA VERGNE**, quien tuvo oportunidad de comparecer ante el tribunal, buscar representación legal y plantear su versión de los hechos.

Durante la audiencia celebrada el 9 de julio de 2025, la señora **PASTRANA RAMOS** atestiguó que el señor **RIVERA VERGNE** le cuestionaba por

---

[50] *Íd.*

qué subía las escaleras y miraba hacia su apartamento; le cerraba la llave de paso del agua; en cinco (5) ocasiones, le ralló su vehículo de motor de lado a lado; le apuñaleo una llanta de su auto; y escupió la puerta de su residencia. Junto con su atestación, la señora **PASTRANA RAMOS** presentó evidencia videográfica y fotográfica de los actos de vandalismos perpetrados por el señor **RIVERA VERGNE**.

Por su parte, el señor **RIVERA VERGNE** reconoció que realizó el acto de escupir la puerta del apartamento de la señora **PASTRANA RAMOS** y en efecto, le dijo que no mirara hacia la sala de su vivienda. El señor **RIVERA VERGNE** formuló ciertas alegaciones sobre la conducta y actitud de la señora **PASTRANA RAMOS**, más no presentó prueba que respaldara su reclamo.

Escuchada la prueba testifical y escudriñada la documental, así como haberle dado credibilidad a los testigos que declararon, el Tribunal Municipal llegó a las siguientes determinaciones de hechos: (i) las partes son vecinos; (ii) el señor **RIVERA VERGNE** constantemente vigila a la señora **PASTRANA RAMOS** y cada vez que esta pasa por la puerta de su apartamento para subir las escaleras este abre la puerta y le realiza expresiones tales como "respeta mi privacidad:; (iii) en cinco ocasiones[,] el señor **RIVERA VERGNE** ha guayado el vehículo de la señora **PASTRANA RAMOS**; (iv) además, en una ocasión[,] le escupió la puerta de su apartamento.

El foro impugnado tuvo exposición a la evidencia desfilada, lo cual incluye, entre otros, observar el comportamiento de los testigos mientras ofrecen su declaración, y escuchar su voz. Entendió que los actos realizados por el señor **RIVERA VERGNE** constituyen un patrón de conducta dirigido a acosar, perseguir, intimidar, amenazar y de cualquier forma interferir con la señora **PASTRANA RAMOS**.

Al considerar las circunstancias del caso, las múltiples interacciones entre las partes, dado la cercanía y la inmediatez de las propiedades, teniendo en cuenta que la entrada del apartamento de la señora **PASTRANA RAMOS** es por las mismas escaleras que llevan al señor **RIVERA VERGNE**; y la señora

**PASTRANA RAMOS** ha manifestado expresamente que se siente intimidada, **corresponde darle deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y la adjudicación de credibilidad del foro de instancia**. Discernimos que no media error manifiesto, pasión, prejuicio o parcialidad que justifique el que revoquemos la decisión del Tribunal al concederle la *Orden de Protección* a la señora **PASTRANA RAMOS**. Por tanto, no se incidió en los errores.

Acorde con lo anterior, debemos colegir que el señor **RIVERA VERGNE** no nos ha puesto en posición para intervenir con la disposición recurrida sobre expedición de *orden de protección* bajo la Ley Núm. 284-1999, *supra*. Esto es, como tribunal revisor, solo debemos intervenir con las determinaciones del foro primario cuando se demuestre que este último actuó con perjuicio, parcialidad, con craso abuso de su discreción o se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. Los planteamientos del señor **RIVERA VERGNE** no nos mueven para inmiscuirnos en el manejo del caso o en la discreción de la juez quien presidió la sala y determinó expedir la *orden de protección* bajo la Ley Núm. 284-1999.

- IV -

Por los fundamentos antes expuestos, *expedimos* el auto de *Certiorari* interpuesto el 27 de agosto de 2025 por el señor **RIVERA VERGNE**; y, en consecuencia, *confirmamos* la *Orden de Protección al Amparo de la Ley Contra el Acecho en Puerto Rico Enmendada* dictaminada el 28 de julio de 2025 por el Tribunal de Primera Instancia, Sala Municipal de San Juan.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones